UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
XING AI JIN, GINA CHIN, and YINGCAI CHI,

                        Plaintiffs,           **REPORT AND RECOMMENDATION**

    -against-                         18-CV-1007 (WFK) (ST)

PARK AVENUE STEM CELL, INC., OKURA
HEALTH, LLC, YOKO SINGER, and JOEL
SINGER,

                        Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

This is a case brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650, *et seq.* The Plaintiffs' Renewed Motion for Conditional Certification of Collective Action has been referred to the Court by the Honorable William F. Kuntz, II for a Report and Recommendation.

For the reasons set forth below, the Court recommends that Plaintiffs' Motion be granted in part and denied in part.

## BACKGROUND

Plaintiffs filed the Complaint in this action on February 15, 2018, *see* ECF No. 1, and an Amended Complaint ("Am. Compl.") on May 14, 2018, *see* ECF No. 10. Plaintiffs allege that Defendants unlawfully denied them (i) minimum wages under the FLSA and NYLL, (ii) overtime wages under the FLSA and NYLL, (iii) "spread of hours" wages under "New York State labor regulations," (iv) wage notices under NYLL § 195-1(a), and (v) "pay stub information," i.e. wage statements, under NYLL § 195-1(d). Am. Compl. ¶¶ 61–109.

Defendants Dr. Joel Singer ("Dr. Singer") and Yoko Singer ("Ms. Singer") are husband and wife. *See* Defendants' Opposition to Renewed Motion for Conditional Certification of

Collective Action ("Opp'n") at 2, ECF No. 25 (referring to Dr. Singer as Ms. Singer's husband). Both of them operate their own healthcare businesses: Dr. Singer operates Park Avenue Stem Cell, Inc., and Ms. Singer operates Okura Health, LLC. Am. Compl. ¶ 55. Plaintiffs allege that they were each employed as live-in maids by Defendants at various points between the months of April and December 2017. Am. Compl. ¶¶ 7, 12, 15, 58.

Plaintiffs previously filed a Motion for Conditional Certification of Collective Action. *See* ECF No. 13. The District Court referred that Motion to this Court. *See* Order, ECF No. 14. At a hearing held on October 24, 2018, the Court denied Plaintiffs' Motion without prejudice to renew because the declarations filed in support of the Motion did not provide the Court with any basis to determine that there were other employees of Defendants who were "similarly situated" to Plaintiffs. *See* Minute Order, ECF No. 21.

Plaintiffs filed their Renewed Motion for Conditional Certification of Collective Action (hereinafter "Renewed Motion"), ECF No. 23, on November 12, 2018. The District Court referred the Renewed Motion to this Court. Order, ECF No. 27. The Renewed Motion contains newly executed declaration from two of the named Plaintiffs. *See* Declaration of Ying Ai Jin ("Jin Decl.") ECF No. 23-1 at 1–3;[1] Declaration of Yingcai Chi ("Chi Decl."), ECF No. 23-1 at 4–6.

In her new declaration, Plaintiff Jin avers that she performed duties primarily including cleaning and preparing food for Defendants, and that on certain occasions she assisted Dr. Singer and Ms. Singer with a move and with handing out flyers. Jin Decl. ¶¶ 4–7. She avers that she typically worked more than 12 hours per day for six to seven days per week but was never paid "properly" for her work, including never being paid overtime wages. *Id.* ¶ 8–10. She avers that

---

[1] The Plaintiff referred to as "Xing Ai Jin" in the Amended Complaint has indicated that her name is in fact "Ying Ai Jin." Jin Decl. ¶ 1. However, Plaintiffs have yet to move to amend the case caption.

one co-worker told her that she was paid her wages by Dr. Singer, but that Ms. Singer later accused her of stealing property and forced her to pay back all of her wages. *Id.* ¶ 11. She avers that she "personally know[s] that there are many other people defendants hired to do the same or similar job as [she] did but [who] did not get paid by defendants," including one woman whom she encouraged to join this action but who was unwilling to do so because of her immigration status. *Id.* ¶ 12. She avers that Ms. Singer repeatedly sought "domestic help" through ads in a Korean language newspaper and through a temp agency, hired domestic workers for a short period of time, but then fired them or refused to pay them through fraud or coercion. *Id*.

Plaintiff Chi avers that her primary duties as an employee of Defendants were "receiving sales phone calls," cleaning, and preparing food. Chi Decl. ¶ 4. She avers that she typically worked more than 12 hours per day for six to seven days per week, but that she was not paid "properly" for her work, including not receiving overtime wages. *Id.* ¶¶ 5–8. She describes several other women who were allegedly subjected to unlawful employment practices by Defendants: (i) a Korean woman with the surname Yum, who worked only one day before she was fired and did not receive any pay; (ii) a Hispanic woman in her mid-20s who worked for 3 months and was not paid at all; and (iii) a Korean woman with the surname Hwang who came from Hawaii and worked for Defendants, but was not paid at all. *Id.* ¶¶ 9–11. Like Plaintiff Jin, she avers that Ms. Singer hired domestic workers through Korean language newspaper ads and temp agencies, and avers that she saw that Ms. Singer "had lists of temp agency she used to fill the position [sic]." *Id.* ¶ 12. She avers that she "talked with other women" who worked for defendants but were fired without pay after being accused of breaking or stealing things. *Id.* ¶ 12.

**DISCUSSION**

Plaintiffs request that the District Court conditionally certify a collective action consisting of "all employees of [Defendants] who worked as [a] maid, kitchen worker, cleaning worker, janitor[], reception[ist], office clerk, nurse[,] administrator or [under] any similar job title at any time between February 16, 2012, and the present." Proposed Notice of Collective Action ("Prop. Notice") at 1, ECF No. 23-2. Plaintiffs also seek accompanying relief including: (i) approving Plaintiffs' Proposed Notice, ECF No. 23-2, and Proposed Consent Forms ("Prop. Consent"), ECF No. 23-3; (ii) directing Defendants to provide contact information for similarly situated employees, contact information for employment agencies they have used, and "telephone carrier information"; and (iii) directing Defendants to refrain from seeking releases of claims from putative collective members. Renewed Motion at 4.

**A. Conditional Certification of Collective Action**

  i. <u>Legal Standard</u>

Under the FLSA, a plaintiff may seek certification to proceed as a collective action, thus allowing other "similarly situated" employees the opportunity to join the litigation. 29 U.S.C. § 216(b); *see also Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). "Although they are not required to do so by [the] FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Courts within this Circuit determine whether to certify a collective action in two stages. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367–68 (S.D.N.Y. 2007); *see also*

*Myers*, 624 F.3d at 554–55 ("[T]he district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible." (footnote omitted)). At the first stage, the Court examines the plaintiffs' pleadings and affidavits to determine whether they are sufficiently "similarly situated" to the potential opt-in plaintiffs. If the Court finds that they are, the Court may *conditionally* certify the case as a collective action and order the parties to issue notice to potential opt-in plaintiffs, providing a timeframe in which they must respond if they wish to opt in to the action. *Lynch*, 491 F. Supp. 2d at 368. The second stage is conducted after discovery is completed, at which time the Court is better positioned to "undertake[] a more stringent factual determination as to whether members of the [collective action] are, in fact, similarly situated." *Id*.

Plaintiffs' burden in this first stage is minimal: plaintiffs "need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting *Hoffman v. Sbarro*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). This standard does not require that the named plaintiffs and the opt-in plaintiffs be identical in all respects, but the "[p]laintiff[s] must at least provide evidence that the proposed class members are similarly situated, in that they are the 'victims of a common policy or plan that violates the law.'" *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012) (citation omitted). To that end, plaintiffs may rely upon their "own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Jeong Woo Kim v. 511 E. 5th Street, LLC*, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

At the preliminary certification stage, all inferences are drawn in favor of the plaintiffs. *Id.* at 446. Because "the court does not resolve factual disputes, decide substantive issues going to the

ultimate merits, or make credibility determinations" at this early juncture, a defendant cannot defeat a conditional certification by presenting conflicting factual assertions. *Lynch*, 491 F. Supp. 2d at 368. "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions[,]'" but "the standard of proof should still remain 'low . . . because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 318 (E.D.N.Y. 2016) (emphasis omitted) (quoting *Meyers*, 624 F.3d at 555). At the second stage of certification following the completion of discovery, "[t]he action may be 'de-certified' if the record reveals that [the putative collective members] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555 (citation omitted).

    ii. <u>Analysis</u>

The Court finds that Plaintiffs have met their modest burden to demonstrate the existence of other similarly situated maids, kitchen workers, and cleaning workers employed by Defendants.

Defendants do not seem to dispute the propriety of conditional certification against Ms. Singer or Okura Health as to these classes of employees, but they do argue that Plaintiffs have not shown that any other categories of employees should be included in the collective. Opp'n at 2 ("[T]he only evidence presented of any 'similarly situated' employees are for domestic workers hired by Yoko Singer."); *see also* Answer to Amended Complaint ¶ 2, ECF No. 11 ("Defendants admit that Plaintiffs worked for Yoko Singer and Okura Health LLC."). Defendants also vigorously oppose certification of a collective against Dr. Singer and Park Avenue Stem Cell, arguing that Plaintiffs have presented nothing other than vague and conclusory allegations to evince that either of these Defendants employed any of the Plaintiffs. Opp'n at 3. In particular, Defendants voice their concern that allowing a collective action to proceed against Park Avenue

Stem Cell or Dr. Singer "would require Dr. Singer's medical practice to disclose employee information, despite any nexus between the individual Plaintiffs and that business." *Id.* at 2.

The Court agrees with Defendants that Plaintiffs have not shown the existence of any similarly situated employees besides maids, kitchen workers, and cleaning workers, despite their request that the District Court include employees who worked in the positions of "janitor[], reception[ist], office clerk, nurse and administrator," Prop. Notice at 1, in the collective. First, the Plaintiffs themselves clearly worked as maids. The section of the Amended Complaint captioned "FLSA 216(b) Collective Action Allegations" asserts that "[a]ll of the named Plaintiffs held the same position, namely live-in maid, and cooked and cleaned the defendants' clinic and their residence." Am. Compl. ¶ 58. In their declarations submitted in support of collective certification, Plaintiffs Jin and Chi both explain that their job duties consisted virtually entirely of cooking and cleaning.[2] Jin Decl. ¶ 4; Chi Decl. ¶ 4. Furthermore, Plaintiffs have not shown that there are any other employees of Defendants besides domestic workers who may have been subjected to an unlawful common policy or plan. Plaintiffs allege that Defendants recruited domestic workers by running classified ads in the "House Keeper" section of the New York Korea Daily newspaper, through which they sought "[l]ive-in maid[s]" who are "good at organizing and cooking," Am. Compl. ¶¶ 56–57, and that Ms. Singer hired domestic workers through temp agencies, Jin Decl. ¶

---

[2] The Court notes that Plaintiff Chi does aver that one of her primary duties "was receiving sales phone calls." Chi Decl. ¶ 4. In the remainder of her declaration and in all of the other documents Plaintiffs have submitted, however, her duties and the other Plaintiffs' duties are defined as consisting strictly of cooking and cleaning. This includes the declaration Plaintiff Chi previously executed in support of Plaintiffs' first motion for collective certification. *See* ECF No. 13-1 at 5 ¶ 5 ("[M]y primary duty was cleaning house and office, preparing food for visitors who visited their office to attend seminars; I performed manual labor for Defendants."). Without any further support and in light of the uniformly contradictory evidence throughout the rest of the record, the lone clause in Plaintiff Chi's declaration stating that she "was receiving sales phone calls" does not affect the Court's finding that the only similarly situated employees to Plaintiffs are other domestic workers.

12; Chi Decl. ¶ 12. Plaintiffs provide accounts of several other employees who were not paid lawfully owed wages, and all of them appear to be other domestic workers. Plaintiffs repeatedly allege that Ms. Singer accused domestic workers of stealing as a pretext to recoup their wages, but do not allege that she did so to any other category of employee. Based on this evidence, Plaintiffs' request to certify employees other than domestic workers is groundless. Plaintiffs have only shown a basis for the certification of a collective consisting of any qualifying employee who worked as a "maid, kitchen worker, [or] cleaning worker," *id.*[3]

As to Defendants' contention that the collective action should not be certified against Park Avenue Stem Cell or Dr. Singer, however, the Court disagrees. While Plaintiffs' submissions predominantly focus on the actions of Ms. Singer, it is not true that they focus exclusively on them. First and most notably, Plaintiffs claim that the location they worked at serves as the office for both Park Avenue Stem Cell, Dr. Singer's business, and Okura Health, Ms. Singer's business. *See* Jin Decl. ¶ 3 (averring that Plaintiff Jin "worked at and for Park Avenue Stem Cell, Inc and Okura Health LLC at 341 East 51st Street, New York, NY 10022"); Chi Decl. ¶ 3 (averring same). Plaintiff Chi also directly avers that she worked for both Dr. Singer and Ms. Singer at this address. Chi Decl. ¶ 3. In addition, Plaintiff Jin avers that on weekends she cleaned a separate house in New Jersey belonging to Dr. Singer, and that Dr. Singer paid her co-worker wages for two months of work before Ms. Singer forced her to return the money. Jin Decl. ¶¶ 5, 11. These allegations

---

[3] Though "maid, kitchen worker, [and] cleaning worker" are somewhat nebulous terms, the Court defines them to mean any employee of Defendants whose job duties consist of, in large part, cooking and/or cleaning. Regardless of the job title given to such employees by Defendants (if any), employees who performed similar duties should be allowed to join the collective action, and their contact information should be disclosed to Plaintiffs consistent with this report and recommendation. *See Cano v. Four M Food Corp.*, No. 08-CV-3005 (JFB) (AKT), 2009 WL 5710143, at *9 (E.D.N.Y. Feb. 3, 2009) (finding that employees with differing job titles could join collective action so long as "their duties were similar in nature").

seem to indicate that Dr. Singer had at least some connection to the named Plaintiffs and potential opt-in plaintiffs. At this early stage, without the benefit of a complete record and drawing all reasonable inferences in favor of Plaintiffs, these facts sufficiently suggest that each of the four Defendants acted as the employers of the named Plaintiffs and putative collective members.

The Court notes Defendants' concern that Park Avenue Stem Cell will be forced to disclose the information of employees who are clearly not eligible to join this action. That concern should be allayed, however, given that the Court only recommends certification of a collective consisting of maids, kitchen workers, and cleaning workers, and Defendants assert that Park Avenue Stem Cell "does not employ any non-medical staff." Opp'n at 2.

### B. Proposed Notice and Consent Forms

Having determined that a collective action should be certified, the Court turns to Plaintiffs' Proposed Notice and Consent Forms. The District Court retains the discretion, under the FLSA, to "implement § 216(b) . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers*, 624 F.3d at 554 (brackets and internal quotation marks omitted). "Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice." *Diaz v. New York Paving Inc.*, 340 F. Supp. 3d 372, 386 (S.D.N.Y. 2018) (internal quotation marks and citations omitted).

The Court recommends approving Plaintiffs' Proposed Notice and Consent Forms, albeit with several modifications, which the Court explains in turn below.

#### i. Eligible Occupations

As the Court has discussed, the only employees eligible to join Plaintiffs' collective action are maids, kitchen workers, and cleaning workers. Plaintiffs' Proposed Notice, however, informs

the putative opt-in plaintiffs that they are eligible to join if they "worked as maid, kitchen worker, cleaning worker, janitor[], reception[ist], office clerk, nurse and administrator." Prop. Notice at 1, 2. In accordance with the Court's recommended restriction of the employees eligible to join the collective as described above, the Court recommends ordering that this list of jobs be changed to "maid, kitchen worker, or cleaning worker."

In an apparent typographical error, the Proposed Notice at one point states that plaintiffs may be eligible to join the action if he or she "work[s] or worked as Kitchen Helper, Cashier, Stocker, Bagger, Receiving, Pricing, Office Clerk and General Manager." *Id.* at 3. This list of titles should also be changed to "maid, kitchen worker, or cleaning worker."

      ii.      <u>Eligible Dates of Employment</u>

The Court must also determine during what time period potential opt-in plaintiffs can have worked for Defendants in order to receive notice of the collective action. Under the FLSA, the maximum statute of limitations is three years, but under the NYLL, it is six years. *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411 (ARR) (VMS), 2017 WL 835321, at *9 (E.D.N.Y. Feb. 14, 2017), *adopted by* 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017). Courts in the Second Circuit have allowed notice of the collective certification of an action under the FLSA to be sent to employees who worked for defendants within the past three years or within the past six years, depending on the facts of the case. *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 563 (S.D.N.Y. 2013) (collecting cases).

Here, Plaintiffs request that the Court allow any employee who worked for Defendants "for the last three years" to receive notice of the collective action. Renewed Motion at 4. However, Plaintiffs' Proposed Notice and Consent Forms advise the potential opt-in employees that they are eligible to join the FLSA putative collective action if they worked for Defendants at any time

between February 16, 2012, and the present. Prop. Notice at 1; Prop. Consent at 1.[4] The original Complaint in this action was filed on February 15, 2018. *See* ECF No. 1 at 1. Thus, accounting for the leap year in 2016, February 16, 2012 is six years prior to the date this action was initiated.

The Court recommends restricting Plaintiffs' collective to a period of three years. Leaving aside that Plaintiffs did not request that notice be sent to employees who worked for defendants within the past six years in the Renewed Motion, the Proposed Notice and Consent Form are inaccurate insofar as they assert that opt-in plaintiffs who did not work for Defendants within the past three years would be eligible to join the FLSA collective. If a court allows notice to be distributed to employees who worked for the defendant more than three years ago, it is only for the purpose of giving them notice that they may have claims under the NYLL; they are not able to join the FLSA collective. *See Sanchez v. El Rancho Sports Bar Corp.*, No. 13-CV-5119 (RA), 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) ("[F]ormer employees who have only state-law claims are not eligible to join [an FLSA] collective action[.]"). Moreover, where notice is sent to employees with potential NYLL claims who are outside of the FLSA's three-year statute of limitations, the notice must clearly explain the relevant distinctions between the two causes of action so as to avoid confusing potential plaintiffs. *See, e.g.*, *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 485–86 (S.D.N.Y. 2016). Plaintiffs' Proposed Notice and Consent Forms, however, contain no such explanation. Neither document even mentions the NYLL at any point.

As such, Plaintiffs' Proposed Notice and Consent Forms would likely create serious confusion among recipients. Courts frequently decline to distribute notices to plaintiffs outside of the FLSA's three-year limitations period on the basis that potential NYLL plaintiffs would be

---

[4] In an apparent typographical error, the Proposed Notice also states at one point that employees are eligible to join as a "party plaintiff" if they were employed by Defendants since *July 1, 2012*. Prop. Notice at 3.

misled into believing that they would be eligible to opt in to the FLSA collective. *See Djurdjevich v. Flat Rater Movers, Ltd.*, No. 17-CV-261 (AJN), 2019 WL 125888, at *1 (S.D.N.Y. Jan. 7, 2019) (collecting cases); *see also Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) ("It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims."). This Court likewise recommends that notice in this case be sent only to employees who worked for Defendants between February 16, 2015, three years prior to the filing of the original Complaint, and the present.[5] The dates on pages 1 and 3 of the Proposed Notice and on page 1 of the Proposed Consent Form should accordingly be changed to February 16, 2015.

    iii.    <u>Preservation of Opt-In Plaintiffs' Right to Choose Their Own Attorney</u>

Plaintiffs who may opt in to this collective action are not required to be represented by Plaintiffs' attorney. They retain the absolute right to choose their own. Notice of a FLSA collective action should make this right clear to potential Plaintiffs. *See Serebryakov v. Golden Touch Transp. of NY, Inc.*, 181 F. Supp. 3d 169, 177 (E.D.N.Y. 2016); *see also, generally, Arciello v. Cty. of*

---

[5] Notice is normally provided to workers employed within three years of the date the notice itself is sent. *See* 29 U.S.C. § 255(a). However, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Fernandez v. Sharp Mgmt. Corp.*, No. 16-CV-0551 (JGK) (SN), 2016 WL 5940918, at *6 (S.D.N.Y. Oct. 13, 2016). The Court recommends this course to most efficiently deal with potential equitable tolling issues.

    The Court also notes that the Amended Complaint, which was filed on May 14, 2018, is the currently operative complaint. However, it is well established that an amended complaint may relate back, for statute of limitations purposes, to the date the original complaint was filed if the claims in the amended complaint arose out of the same "general fact situation alleged in the original pleading." *Leber v. Citigroup 401(K) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 17 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). Here, the Amended Complaint is highly similar to the original Complaint. The Court thus recommends finding that the Amended Complaint relates back to the original Complaint, which allows notice to be sent to employees who worked for Defendants within three years prior to the filing of the original Complaint on February 15, 2018.

*Nassau*, No. 16-CV-3974 (ADS) (SIL), 2017 WL 4998074, at *7 (E.D.N.Y. Oct. 30, 2017) ("[W]here the notice states that potential plaintiffs may select their own attorney, . . . there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel.") (internal quotation marks and citations omitted). Advising potential opt-in plaintiffs of this right is particularly important where the consent forms are to be sent to plaintiffs' counsel rather than the Clerk of Court, as is the case here, *see* Prop. Notice at 4.

As written, the Proposed Notice does not make this right sufficiently clear. It states that Plaintiffs' attorney "will represent you if you decide to join this suit . . . ." *Id*. This shall be changed to "is available to represent you if you decide to join this suit . . . ." Immediately after this sentence, the Notice shall also state, "If you decide to join this lawsuit, you may retain counsel of your choosing, or you may represent yourself." *See Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972 (JS) (AKT), 2018 WL 1581975, at *14 (E.D.N.Y. Mar. 30, 2018).

iv. <u>Miscellaneous Corrections</u>

Besides the issues the Court has mentioned, there are certain typographical errors in the Proposed Notice and Consent Form. The Proposed Consent Form captions the instant action as pending "in the United States District Court for the North District of Illinois, Eastern Division." Prop. Consent at 1. Plaintiffs shall correct this before distributing the forms to potential opt-in plaintiffs. The case caption on the Proposed Consent Form also lists the first Plaintiff's name as "Ying Ai Jin" rather than "Xing Ai Jin." *Id*. Regardless of the correct spelling of her name, Plaintiffs' Amended Complaint spells her first name "Xing." Plaintiffs shall either revise the case caption of their Complaint or distribute the notice and consent forms with her name spelled "Xing" in the caption.

There are several other typographical errors and grammatical mistakes in Plaintiffs' proposed notice and consent forms. Plaintiffs may wish to correct these errors, without diverging from the substance of the text that the Court has recommended herein.

v. <u>Certificates of Translation</u>

Plaintiffs' Proposed Notice and Consent Forms contain Korean and Spanish translations of the English version. Defendants object to these translations because they are not accompanied by certificates of translation. Opp'n at 3. The Court agrees with Defendants. Before distributing foreign language translations of the Proposed Notice and Consent Forms, Plaintiffs shall provide certificates of translation executed by persons competent in both English and the relevant language verifying that the foreign language version is an accurate translation of the English version. The translations must be made, and the certificates of translation executed, after Plaintiffs have revised the Proposed Notice and Consent Forms in accordance with the Court's direction herein.

vi. <u>Time for Opting in</u>

The Proposed Notice does not address the timeframe within which potential Plaintiffs must return the signed consent form to Plaintiffs' counsel. *See* Prop. Notice at 4 ("In order for you to participate as a plaintiff in this case, the fully completed Notice of Consent to Become a Party Plaintiff (*yellow form*) must be *received* by the Plaintiff's attorneys no later than [blank space].").

"Courts in this Circuit routinely restrict the opt-in period to 60 days." *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) (collecting cases). Before Plaintiffs mail the notice, they shall fill in the blank space on page 4 of the Proposed Notice, cited above, with the date that falls 60 days after the date they will mail the notices and consent forms.

### C. Other Relief

Plaintiffs request various other related forms of relief. *See* Renewed Motion at 4. The least controversial is their request that Defendants be ordered to produce similarly situated employees' contact information. "Courts within the Second Circuit typically grant this type of request when granting a motion for conditional certification of an FLSA collective action." *Cruz v. Lyn-Rog Inc.*, 754 F. Supp. 2d 521, 526 (E.D.N.Y. 2010) (collecting cases). The Court recommends directing Defendants to provide to Plaintiffs, within ten days of the District Court's order, the names, job titles, addresses, telephone numbers, and e-mail addresses of employees who worked as maids, kitchen workers, or cleaning workers since February 16, 2015.

Plaintiffs also make more unusual requests for discovery of information. First, Plaintiffs request that Defendants provide the contact information for any employment agencies they may have used. Renewed Motion at 4. The Court is unaware of precedent for such an order. Although Defendants are expected to exercise means available to them to obtain the contact information of their current and former employees, Plaintiffs have not provided a sufficient basis for taking discovery from nonparty employment agencies. The Court recommends denying this request.

The same goes for Plaintiffs' request that Defendants provide "telephone carrier information, including cellular and landline, so that plaintiffs may subpoena." *Id*. It is unclear what exactly Plaintiffs are seeking, but to the extent that they seek to take discovery against telephone carriers, they have shown no grounds for doing so. The Court recommends denying this request.

Finally, Plaintiffs request that the District Court direct Defendants "to refrain from seeking releases or waivers of claims from the putative class members." *Id*. It may indeed be unlawful for a defendant to obtain a release or waiver of an employee's FLSA or NYLL claim without prior judicial authorization. *See Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 (ILG) (RLM), 2011 WL

3235628, at *2 (E.D.N.Y. July 27, 2011). At the same time, however, courts are not required to issue an order, ex ante, specifically enjoining defendants from doing so. *Id.* at *3 ("Case law demands that trial courts exercise 'caution' in delineating such restraints, to ensure that they are 'justified by a likelihood of serious abuses.'") (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981)). Plaintiffs have not made any showing that such an injunction is merited, and the Court does not recommend issuing one.

## CONCLUSION

For the reasons set forth above, the Court recommends that the District Court:

(i) Conditionally certify a collective action consisting of maids, kitchen workers, and cleaning workers who have been employed by any of the Defendants;

(ii) Direct Defendants to produce, within ten days of the District Court's order, the names, job titles, addresses, telephone numbers, and e-mail addresses of employees who worked in the above referenced positions between February 16, 2015 and the present;

(iii) Authorize Plaintiffs to distribute the Proposed Notice and Consent Forms, subject to the modifications discussed herein, to potential opt-in Plaintiffs; and

(iv) Deny Plaintiffs' other requests for relief.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas*

*v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Responses to any objections shall be due fourteen (14) days from service of the objection. *See* Fed. R. Civ. P. 72(b)(2).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
August 29, 2019